# UNITED STATES BANKRUPTCY COURT
## for the
## DISTRICT OF MASSACHUSETTS

```
=========================================
                                          *
In Re:                                    *
                                          *  Chapter 13
    RICHARD N. GOULD, JR. and             *  No. 06-12324-WCH
    CINDY L. GOULD,                       *
                                          *
                                          *
                   Debtors                *
                                          *
=========================================
```

### BENCH DECISION ON MOTION FOR RELIEF FROM STAY

### August 18, 2006

Nathaniel S. Mason, Trustee of the Sanford Financial Trust ("Sanford") filed this motion for relief from the automatic stay (the "Motion")[1] seeking to proceed against property (the "Property") of the Debtors, Richard N. Gould, Jr., and Cindy L. Gould ( "Richard" and "Cindy" and collectively "Debtors").  Debtors filed a response (the "Response").[2]  For the reasons stated below, the motion is denied without prejudice.

### Facts

The following facts are set forth in the Motion and, unless otherwise indicated, are admitted by the Response.

Debtors purchased the Property on December 31, 1993.  On May 2, 2005, they

---

[1] Docket No. 11.

[2] Docket No. 27.

1

executed a note and mortgage in favor of Sanford in the principal amount of $161,000.00. When Debtors defaulted in their payments, Sanford commenced foreclosure proceedings in the Massachusetts Land Court and recovered judgment. It then scheduled a foreclosure sale for January 18, 2006. The sale was rescheduled to July 25, 2006[3] because Cindy filed a Chapter 13 petition on January 16, 2006.[4] Cindy's petition was dismissed June 14, 2006.[5]

However, Richard commenced the present case on July 17, 2006, thus staying the second scheduled sale. Cindy was subsequently added as a co-debtor.[6] Debtors admit that on the date of Richard's filing, the balance due to Sanford was $217,008.72.[7] Other admitted encumbrances on the Property are real estate taxes of $1,743.89 plus per diem interest and utility charges of at least $207.00. There is also an execution in favor of NStar Electric in the amount of $5,290.06.[8] The total encumbrances aggregate at least $224,249.67. Richard filed a declaration of homestead on July 16, 2006.[9]

---

[3] I have held that a single continuance is not a violation of the automatic stay. *In re* Heron Pond, LLC, 258 B.R. 529, 530 (Bankr. D. Mass. 2001).

[4] *In re* Cindy L. Gould, Docket No. 06-10095.

[5] Sanford asserts that the prior case was dismissed because of Cindy's failure to attend several § 341 meetings. Motion, ¶ 2. Debtors deny that this was the reason for dismissal. Response, ¶ 2. Reference to the docket of the prior case indicates that it was dismissed with prejudice under § 109(g) for several reasons, one of which was failure to attend § 341(a) meetings.

[6] Docket No. 9, dated July 25, 2006.

[7] Motion and Response, ¶¶ 9.

[8] Motion and Response, ¶¶ 10, 12. Debtors assert that they will file a motion under § 522(f) to avoid the NStar execution. Response, ¶ 12.

[9] Response, ¶ 14.

2

Sanford offers a broker's price opinion giving the fair market value of the Property as $280,000 as of May 10, 2006.[10] Sanford asserts that the liquidation value is $210,000.00 "based on its recent experience with properties on Cape Cod."[11] Debtors counter that the value of the property is $320,000.00.[12]

The parties agree that pre-petition arrears total $56,008.72.[13] They disagree as to whether post-petition payments are in arrears as well.[14]

## Discussion

Sanford argues that it is entitled to relief from stay first because Debtors do not have any equity in the Property and it is not necessary for an effective reorganization, entitling Sanford to relief under 11 U.S.C. § 362(d)(2). Further, Sanford urges that it is entitled to relief because "the filing of this petition is a scheme to delay, hinder or defraud Sanford ... and involved the filing of multiple bankruptcies," citing 11 U.S.C. § 362(d)(4)(B).[15] Debtors deny these assertions.[16]

*Equity and Necessity for Reorganization*

Sanford's broker values the property at $280,000, which Sanford discounts by 25%

---

[10] Motion, Exhibit H.

[11] Motion, ¶ 15.

[12] Response ¶ 15. This is the same value stated in the schedules in the current case, filed August 7, 2006.

[13] Motion and Response, ¶¶ 17.

[14] *Ibid.*

[15] Motion, ¶ 18 (emphasis added).

[16] Response, ¶ 18.

to arrive at a liquidation value of $210,000.00. There are two assumptions behind this calculation: That liquidation value is the value I should use in connection with a motion for relief from stay and that 25% is an appropriate discount rate from fair market value to arrive at liquidation value.

Section 506(a) tells us that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property. . . ." I have traditionally followed Judge Queenan's lead in using liquidation value in the context of a motion for relief from stay[17] although it does not seem to appear in any of my published decisions, and I see no reason to stray from that position today. However, my experience differs from Sanford's, and I find that a discount factor of 25% is excessive today. I appreciate that 25-30% was commonly urged by mortgagees a decade ago, but the result of foreclosure sales in recent years leads me to hold that 10-15% is more realistic today.

Applying a factor of 15% to Sanford's fair market value of $280,000, I arrive at $238,000.00, which exceeds the total of the mortgage to Sanford and outstanding taxes by about $20,000.00. I need not consider the encumbrances junior to Sanford at this time. In the short run at least there is equity in the property behind the first mortgage. As a result I need not address the interesting issue of whether the fact that the Debtors need a home means that they require <u>this</u> home for a successful reorganization.

Sanford's first reason for obtaining relief is not well founded.

---

[17] *See, e.g., In re* Robbins, 119 B.R. 1 (Bankr. D. Mass. 1990). I did rule that fair market value was appropriate in the case of a debtor retaining property in a Chapter 11 plan, but noted that "the standard might be otherwise under other circumstances, a situation which is contemplated by the language of the statute." *In re* Winthrop Old Farm Nurseries, Inc., 161 B.R. 870 (Bankr. D. Mass. 1993), *aff'd* 50 F.3d 72 (1st Cir 1995).

A Scheme to Delay, Hinder or *Defraud*

I have emphasized the word "or" in my two recitations of Sanford's argument for a particular reason — it misquotes the statute. While in the other five instances where the Code deals with the conjoined concepts of "hinder" and "delay" and "defraud" the combination is in the disjunctive — "hinder, delay or defraud"[18] — the new ground for relief from stay added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 speaks of "hinder, delay and defraud." I find that since Congress clearly knew how to use the disjunctive form when it wishes to do so, not doing so in section 362(d)(4) was deliberate.[19]

I do not think that even Debtors could deny that both of the filings in 2006 were intended to hinder and delay the imminent foreclosures. However, I cannot see that the filings, standing alone, support the naked statement that the intent was to defraud. While it is true that Fed. R. Civ. P. 9(b)'s requirement that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity" only applies in adversary proceedings,[20] it is a sound exposition of proper motion practice when fraud is the issue.

I appreciate that this is a case of first impression, at least locally, and so Sanford may have been blindsided by the position which I take today. As a result, while I am going

---

[18] 11 U.S.C. §§ 101(32), 522(o), 548(a)(1)(A), 548(e)(i)(D), and 727(a)(2).

[19] "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie v. United States, 540 U.S. 526, 534 (2004).

[20] Fed. R. Bankr. P. 7009.

5

to deny its motion for relief from stay, I do so without prejudice, so that, if it is able to make specific allegations of fraud or if other factors change, it is free to file a further motion.

A separate order will issue.

William C. Hillman
United States Bankruptcy Judge